**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

CERTIFIED RESTORATION
DRYCLEANING NETWORK, LLC,

    Plaintiff,

v.                                             Case No. 12-10531

FEDERAL INSURANCE COMPANY,

    Defendant.
                                         /

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Certified Restoration Drycleaning Network, LLC, ("CRDN") alleges that Federal Insurance Company ("Federal") breached an insurance policy by failing to defend and indemnify CRDN in an underlying action in which it was alleged that CRDN had itself breached a contractual agreement with its franchisee. All agree that the policy at issue here excludes coverage for breach of contract claims, and CRDN accordingly argues that the underlying suit did not actually claim breach, but rather fraud.

At the court's direction, the undisputed material facts were identified, and the parties now cross-move for summary judgment, asking the court to declare whether the insurance policy's contract exclusion provision precluded coverage. The motions have been fully briefed, and a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f)(2). The underlying suit was, as alleged and in fact, for breach of the contractual relationship between CRDN and its franchisee. The court will grant Federal's and deny CRDN's motion for summary judgment.

## I. BACKGROUND

CRDN franchises a textile and restoration dry cleaning system throughout the United States, Canada, and the United Kingdom.  In 2007, CRDN initiated discussions with Michael Fingerman, the owner and operator of East Coast Garment Restoration ("East Coast"), regarding East Coast becoming a franchisee of CRDN in northeast Pennsylvania.  In order to enroll East Coast as a franchisee, Fingerman had to pay an $11,000 fee and attend a one-week training seminar.  Fingerman was also provided a copy of CRDN's Standard Franchise Agreement.  On January 10, 2008, Fingerman executed the Franchise Agreement and paid the required fee.  He and his employee then attended the training seminar that was held from January 14 through January 18, 2008.  CRDN sent Fingerman a letter on January 18, 2008, welcoming him into the CRDN network.

On January 29, 2008, CRDN sent East Coast a letter about terminating their business relationship.  CRDN decided discontinue the business relationship based on information it learned from a background check and review of Fingerman's qualifications.  The letter described the termination process and included a copy of a mutual release to be executed by both CRDN and East Coast.  The mutual release read, "CRDN and FRANCHISE OWNER have reached agreement that it is in the best interest of all parties for FRANCHISE OWNER to discontinue operations as a CRDN franchisee and terminate the Franchise Agreement."  (Dkt. # 18-3 at Pg 15.)  East Coast did not execute the mutual release and, on March 5, 2008, filed suit against CRDN in Pennsylvania state court.  East Coast alleged two counts: (1) breach of contract and (2) breach of covenant of good faith and fair dealing.  The Pennsylvania court dismissed

the complaint on July 21, 2008, because the lawsuit was based on the breach of the Franchise Agreement which contained a mandatory arbitration provision. CRDN and East Coast engaged in arbitration and agreed to a settlement on August 11, 2011.

CRDN held an insurance policy (the "Policy") issued by Federal. Under the Policy, Federal had a duty to defend CRDN against any "Claim," defined as a civil proceeding, criminal proceeding, or written demand for damages or non-monetary relief. Federal was required to indemnify CRDN for the costs incurred in defending a Claim and the amount for which CRDN became legally obligated to pay as a result of a Claim, including damages, judgments, and settlements. The Policy included a breach of contract exclusion clause that stated the Policy would not provide coverage "based upon, or arising from, or in consequence of any actual or alleged liability of an Insured Organization under any written or oral contract or agreement." (Dkt. # 18-2 at Pg 4.)

On May 23, 2008, CRDN notified Federal of East Coast's lawsuit and sought coverage under the Policy. Federal denied coverage based upon the Policy's contract exclusion clause. After CRDN reached a settlement, it again notified Federal and sought indemnification under the Policy for defense costs and damages. Federal denied coverage for a second time, explaining that the Policy's contract exclusion clause precludes coverage. CRDN filed the present cause of action against Federal alleging that Federal breached the Policy by denying coverage. The parties have cross-moved for summary judgment.

## II. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when "there is no genuine issue as to any material fact and the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(a). The moving party must first show the absence of a genuine issue of material fact. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then shifts to the non-moving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The non-moving party must put forth enough evidence to show that there exists a genuine issue to be decided at trial. *Plant*, 212 F.3d at 934 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251-52. When deciding summary judgment motions, "the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003) (citing *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The court does not weigh the evidence to determine the truth of the matter, but rather to determine if the evidence creates a genuine issue for trial. *Sagan*, 342 F.3d at 497 (quoting *Anderson*, 477 U.S. at 249).

## III. DISCUSSION

The sole issue before the court is whether the Policy's contract exclusion clause precluded Federal from providing coverage to CRDN. Article III Section C(2) of the Policy provides:

> No coverage will be available under Insuring Clause (C) for any Insured Organization Claim based upon, arising from, or in consequence of any actual or alleged liability of an Insured organization under any written or oral contract or agreement, provided that this Exclusion (C)(2) shall not apply to the extent that an Insured Organization would have been liable in the absence of the contract or agreement.

("Section C(2)") (Dkt. # 18-5 at Pg 36). Federal argues that CRDN and East Coast entered into the Franchise Agreement and that East Coast's claims against CRDN arise from a breach of that Agreement, thereby triggering Section C(2). CRDN disagrees, claiming that even though East Coast's two causes of action in its state court complaint appeared to arise from a breach of the Franchise Agreement, the substance of the complaint indicates that East Coast actually alleged misrepresentation. CRDN maintains that the misrepresentations were made before any alleged contractual relationship arose between CRDN and East Coast and, consequently, Section C(2) is inapplicable. Furthermore, CRDN insists that no contractual relationship existed between it and East Coast.

The Policy does not specify which state's law governs the Policy, but both parties assert that Michigan law should govern the Policy. "[F]ederal courts sitting in diversity must apply the choice-of-law rules of the forum state." *Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir. 1998) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Michigan courts apply the Restatement (Second) of Conflicts of Laws to determine which state's law governs a contract dispute. *Chrysler Corp. v. Skyline Indus. Servs.,*

5

*Inc.*, 528 N.W.2d 698, 703 (Mich. 1995). Under § 188 of the Restatement, the contacts that a court should consider in determining the applicable law include: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, place of incorporation, and place of business of the parties. Restatement (Second) of Conflict of Laws § 188(2) (1971). The parties negotiated and executed the Policy in Michigan. CRDN is a Michigan corporation with its principal place of business in Michigan. The court agrees with the parties' suggestion and will apply Michigan law.

CRDN argues that Federal had a duty to defend CRDN and indemnify it for all of its defense costs and financial loss arising from East Coast's lawsuit. Exclusion clauses in insurance policies are strictly construed against the insurer; so too with any ambiguous contract provision being construed against the insurer and in favor of the insured. *Farm Bureau Mut. Ins. Co. v. Stark,* 468 N.W.2d 498, 501 (Mich. 1991), *overruled on other grounds by Smith v. Globe Life Ins. Co.*, 597 N.W.2d 28 (Mich. 1999). An insurer must defend an insured if the claims against the insured "even arguably come within the policy coverage." *Am. Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 550 N.W.2d 475, 481 (Mich. 1996). "An insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy." *Id.* (citation omitted).

The allegations in the complaint determine whether an insurer has a duty to defend. *Allstate Ins. Co. v. Freeman*, 443 N.W.2d 734, 737 (Mich. 1989). However, the duty to defend is not "limited by the precise language of the pleadings." *Am. Bumper*, 550 N.W.2d at 481. "The insurer has the duty to look behind the third party's allegations

to analyze whether coverage is possible." *Id.* The court must analyze "the basis for the injury and not the nomenclature of the underlying claim." *Allstate Ins. Co.*, 443 N.W.2d at 737 (1989) (citations omitted). The allegations must be "examined to determine the substance, as opposed to the mere form, of the complaint." *Id.* (citations omitted). "In a case of doubt as to whether or not the complaint against the insured alleges a liability of the insurer under the policy, the doubt must be resolved in the insured's favor." *Am. Bumper*, 550 N.W.2d at 481.

East Coast's complaint details the story of the alleged execution and breach of the Franchise Agreement. The factual allegations describe the discussions that CRDN held with Fingerman regarding East Coast becoming a franchisee in northeast Pennsylvania. CRDN allegedly represented that the then-Philadelphia franchisee was underperforming and that it wanted to grant East Coast the Philadelphia territory. CRDN allegedly further represented that East Coast would likely generate $3 million in gross revenues by operating as a franchisee in northeast Philadelphia and reiterated that Fingerman would be awarded the Philadelphia franchise because the current franchisee was performing poorly. The complaint alleged that Fingerman completed the required steps in order to execute the Franchise Agreement, including paying CRDN $11,000 and attending the one-week training seminar. Fingerman executed and mailed the Franchise Agreement, which CRDN accepted. After completing the one-week seminar, CRDN provided East Coast with two addendum to the Franchise Agreement for execution. East Coast began operating as a CRDN franchisee on January 18, 2008. However, other franchise members became concerned because Fingerman also owned CPR Restoration and Cleaning Services, LLC, ("CPR") a company that provides

emergency contracting services in response to fire, smoke, and water damage. The other members considered CPR a competitor of their referral sources. Furthermore, ServiceMaster, a disaster recovery company that offered similar services as CPR, was a significant source of referral business to CRDN and allegedly threatened to withdraw its referrals if East Coast remained a franchisee. According to the complaint, CRDN unilaterally terminated East Coast as a franchisee over these concerns.

The complaint explained that the Franchise Agreement provided four bases on which CRDN could terminate the contract with cause and asserted that CRDN did not terminate the Agreement on any of those bases. East Coast brought two counts against CRDN entitled "Breach of Contract" (Count 1) and "Breach of Covenant of Good Faith and Fair Dealing" (Count 2). (Dkt. # 18-6 at Pg 10-11.) Count 1 alleged that East Coast and CRDN entered into the Franchise Agreement and that East Coast suffered damages as a result of CRDN's breach of the Agreement. Count 2 alleged that the Franchise Agreement was subject to an implied covenant of good faith which CRDN violated by unilaterally terminating the Franchise Agreement without cause.

The form, language, and substance of the complaint all support the notion that East Coast's claims against CRDN arose out of CRDN's alleged breach of the Franchise Agreement. Of the complaint's thirty-two numbered paragraphs, only two reference representations made by CRDN to "induce" Fingerman to enroll East Coast as a franchisee. (Dkt. # 18-6 at Pg 7 ¶¶ 8-9.) These allegations constitute a small part of the background story and illustrate why Fingerman was interested in enrolling East Coast as a franchisee of CRDN; nothing in the complaint suggests that East Coast was seeking relief for CRDN's alleged misrepresentations listed in those two paragraphs.

Upon examining the substance of the complaint, the only basis for East Coast's injuries arose from CRDN's alleged breach of the Franchise Agreement. Indeed, the Philadelphia court also found that the basis of the complaint arose from the breach of the Franchise Agreement. In its July 21, 2008 order, the Philadelphia court held that "Plaintiff's Complaint is dismissed since the contract upon which this lawsuit is based contains a mandatory arbitration provision." (Dkt. # 18-8 at Pg 2.) This court entertains no doubt that the substance of East Coast's complaint alleged injuries arising from CRDN's alleged breach of the Franchise Agreement.

CRDN argues that Fingerman's deposition testimony and the settlement agreement executed by CRDN and East Coast evidence the true basis of East Coast's claims. At his deposition, Fingerman provided greater details about the representations alleged in the complaint that were "factor[s]" in his decision to enroll East Coast as a franchisee. (Dkt. # 18-15 at Pg 9.) The settlement agreement states that East Coast asserted the following claims against CRDN:

> (1) that CRDN misrepresented to [East Coast] that [East Coast] would earn a minimum of $3 million dollars per year in gross revenues;
>
> (2) that CRDN misrepresented to [East Coast] that [East Coast] would be awarded the Philadelphia franchise if it took over the franchise in Northeast Pennsylvania;
>
> (3) that after the Negotiations were completed, on or about January 10, 2008, [East Coast] entered into a Franchise Agreement to operate a CRDN franchise in northeast Pennsylvania, commonly referred to as the Scranton Franchise; and
>
> (4) that on or about January 29, 2008, CRDN sought to terminate any business relationship with [East Coast] which resulted in the filing of an action in the Court of Common Pleas of Philadelphia County which was ultimately dismissed requiring the filing of a claim through the American Arbitration Association.

9

(Dkt. # 18-11 at Pg 2.) CRDN maintains that these claims, which were agreed-upon by East Coast and CRDN in executing the settlement agreement, prove that the substance of East Coast's claims were based upon pre-contractual misrepresentations, not a breach of the Franchise Agreement. Furthermore, CRDN avers that East Coast's claims were not "fully identified and fleshed out by [East Coast]" until the settlement agreement was executed. (Dkt. # 18 at Pg 18.)

It is not realistic to argue that East Coast was unable to identify the true nature of its claims until the settlement agreement was executed. East Coast's complaint unambiguously brings two counts that arise from a breach of the Franchise Agreement. Furthermore, the arbitration demand, which East Coast completed and filed, explicitly states under an attached "Nature of the Dispute" form that East Coast commenced an action against CRDN "for breach of a franchise agreement" and that, because CRDN "unilaterally repudiated the contract," "[East Coast] seeks damages for this *breach of contract*." (Dkt. # 18-10 at Pg 4-5) (emphasis added).

Regardless, Fingerman's deposition testimony and the settlement agreement are immaterial to whether Federal had a duty to defend CRDN. "The duty of the insurer to defend the insured depends upon the allegations in the complaint of the third party in his or her action against the insured." *Citizens Ins. Co. v. Secura Ins.*, 755 N.W.2d 563, 566 (2008) (citation omitted). The duty to defend "is predicated not on facts disclosed by an insurer's independent investigation which indicates or even proves noncoverage, but *only* upon allegations in the complaint against the insured." *Dochod v. Cent. Mut. Ins. Co.*, 264 N.W.2d 122, 124 (1978) (emphasis added). The court need not consider

Fingerman's testimony or the settlement agreement in deciding whether Federal had a duty to defend, but instead must only analyze the allegations within East Coast's complaint against CRDN. As the court has already found, there is no doubt that the basis of the injuries alleged in East Coast's complaint arose from CRDN's alleged breach of the Franchise Agreement. Therefore, Federal was excluded from providing coverage to CRDN under Article III Section C(2) of the Policy and was not obligated to defend or indemnify CRDN in its action against East Coast.

## IV. CONCLUSION

IT IS ORDERED that Defendant's motion for summary judgment [Dkt. # 19] is GRANTED and Plaintiff's motion for summary judgment [Dkt. # 18] is DENIED.

        s/Robert H. Cleland
        ROBERT H. CLELAND
        UNITED STATES DISTRICT JUDGE

Dated: April 16, 2013

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 16, 2013, by electronic and/or ordinary mail.

        s/Lisa Wagner
        Case Manager and Deputy Clerk
        (313) 234-5522